JOAN BERNARD ARMSTRONG, Chief Judge.
 

 hAt issue in this writ application is a claim by insureds against the agents on their property insurance policies for damages arising from alleged misrepresenta
 
 *440
 
 tions and breach of fiduciary obligations by the agents in the course of their business dealings with the plaintiffs. The trial court granted defendant agents’ Motion for Summary Judgment, and the plaintiffs/relators applied to this Court for supervisory review of that judgment. On May 21, 2009, we granted the writ, finding that the existence of genuine issues of material fact precluded summary judgment at this point in the litigation. The defendant agents sought supervisory review in the Louisiana Supreme Court, which granted the writ and remanded to this Court for briefing, argument, and full opinion. On January 8, 2010, this Court issued an order setting forth a briefing schedule and setting the matter for oral argument, in compliance with the Louisiana Supreme Court’s Order. For the reasons that follow, we grant the plaintiffs’ writ application, affirm in part and reverse in part the summary judgment entered in favor of the defendant agents, Land remand the case to the district court for further proceedings consistent with this opinion.
 

 This Court’s decision in
 
 City Blueprint & Supply Co., Inc. v. Boggio,
 
 08-1093 (La. App. 4 Cir. 12/17/08), 8 So.3d 62, a detrimental reliance claim against insurance agents, held:
 

 To recover on a claim of negligent misrepresentation, a plaintiff must show “(1) a legal duty to supply correct information; (2) breach; and (8) damages resulting from justifiable reliance on the misrepresentation.... An insured is responsible for reading his policy and is presumed to know its terms.” [Citations omitted.]
 

 Plaintiffs argue that this Court should adopt the position taken by the writ panel in
 
 Middleton-Cook v. United States Fidelity & Guaranty, unpub.,
 
 08-0903 (La.App. 4 Cir. 8/21/2008),
 
 writ denied,
 
 08-2278 (La.11/21/08), 996 So.2d 1112, in which we held:
 

 We do not find that the plaintiff/respondent had a duty to read the policy and discover the problems of under-insurance and non-coverage; the date on which the plaintiff/respondent should have discovered the problem was when he received notice that his damages would not be covered under his policy.
 

 We adopt the latter view, and, as a result, the statutory peremptive period applicable to the plaintiffs’ claims began to run on the date they received notice that State Farm denied their claims under the applicable policies of insurance.
 

 We review the trial court’s partial summary judgment dismissing the plaintiffs’ claims against the insurance agents
 
 de novo. Independent Fire Ins. Co. v. Sunbeam Corp.,
 
 99-2181, 99-2257, p. 7 (La.2/29/2000), 755 So.2d 226, 230. |sThe Louisiana Supreme Court summarized the applicable legal principles governing a defendant’s entitlement to summary judgment in
 
 King v. Parish National Bank,
 
 04-0337, pp. 7-8 (La.10/19/04), 885 So.2d 540, 545-46.
 

 Favored in Louisiana, the summary judgment procedure “is designed to secure the just, speedy, and inexpensive determination of every action” and shall be construed to accomplish these ends. La.Code Civ. Proc. Art. 966(A)(2). Summary judgment shall be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and the mover is entitled to judgment as a matter of law.” La. Code Civ. Proc. Art. 966(B);
 
 Jones v. Estate of Santiago,
 
 03-1424, p. 4 (La.4/14/04), 870 So.2d 1002, 1006.
 

 Appellate courts review grants of summary judgment
 
 de novo,
 
 using the
 
 *441
 
 same criteria that govern the trial court’s consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law.
 
 Ocean Energy, Inc. v. Plaquemines Parish Gov’t,
 
 04-0066 (La.7/6/04), 880 So.2d 1. The movants, here defendants, bear the burden of proof. La. C.C.P. 966(C)(2). However, because the instant defendants will not bear the burden of proof at trial, it is not necessary that they negate all essential elements of [plaintiffs] action, but rather that they merely point out to the court that there is an absence of factual support for one or more elements essential to [plaintiffs] action. [Citations omitted.] If defendants meet this initial burden, the burden then shifts to [plaintiff] to present factual support adequate to establish that he will be able to satisfy the eviden-tiary burden at trial. [Citation omitted.] Thereafter, if [plaintiff] fails to meet this burden, there is no genuine issue of material fact and movants are entitled to summary judgment as a matter of law. This court has recognized that a “genuine issue” is a “triable issue,” an issue in which reasonable persons could disagree. [Citations omitted.] Further, this court has defined a “material fact” to be one in which “its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery.” [Citation omitted.]
 

 I/The Louisiana Civil Code Ancillaries in La. R.S. 9:5606 provide, in pertinent part, for the time limitations applicable to institution of actions for professional insurance agent liability as follows:
 

 A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
 

 [[Image here]]
 

 D. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458, and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
 

 The plaintiffs’ claims relate to three properties located in St. Bernard Parish that were seriously damaged in the aftermath of Hurricane Katrina in August of 2005. With respect to the issue of the insurance agents’ liability, the plaintiffs alleged in their petition that the agents advised and represented to them that (1) they should take out the minimum amount of flood insurance and more homeowners’ coverage, because there was virtually no chance of flooding in St. Bernard, and (2) whatever the flood policy did not pay would be paid under the homeowners’ policy. The plaintiffs also claim that the insurance agents breached their fiduciary duties to them in the following non-exclusive particulars: (1) failing | ftp provide and/or advise the plaintiffs to secure the proper amount of homeowners’ insurance; (2) failing to provide and/or advise the plaintiffs to secure adequate flood insurance; (3) failing to provide and/or advise
 
 *442
 
 the plaintiffs that excess flood insurance was an available and viable option; (4) failing to inform the plaintiffs of the limitations and exclusions of the homeowners’ and flood policies; (5) underinsuring the plaintiffs; and (6) any other acts that would become known prior to trial.
 

 Plaintiffs filed the instant suit on February 22, 2006. Because the relevant facts differ as to each of the properties, we shall consider them separately.
 

 ROYAL STREET Mr. and Mrs. Seruntine lived in a home located at 6901 Royal Street in Arabi, Louisiana. Mrs. Seruntine owns the property, and at the time of Hurricane Katrina, State Farm Fire and Casualty Company
 
 [1]
 
 (State Farm) had in force an insurance policy with limits, according to the plaintiffs’ petition, of $193,393 for the dwelling and $145,045 for the plaintiffs’ personal property located in their home. According to the petition, State Farm issued a policy of flood insurance on the property with limits of $150,000 for the dwelling and $60,000 for the plaintiffs’ personal property. The plaintiffs purchased both the homeowner’s policy and the flood policy on March 30, 2000, through defendant LeBlanc’s insurance agency. Mr. Seruntine testified that he had only $150,000 in flood insurance because his agent told him that he did not need flood insurance since the property was in a no flood zone, and, if it did flood, the homeowner’s insurance would cover the difference. Mrs. Seruntine’s testimony on deposition confirmed her husband’s testimony. Mr. Seruntine testified that he paid his annual renewals 1 (¡when they came and had no further contact with the agent with respect to this property. Mrs. Serun-tine noted in her deposition testimony that neither she nor her husband requested a specific amount of flood or homeowners’ coverage for the property, and did not know how the agents derived the coverage amounts. She also denied having read the policies. The plaintiffs do not allege any contact with the agency following the initial purchase in 2000.
 

 CENTER STREET Mr. and Mrs. Seruntine operated their business from a house located at 1931 Center Street in Arabi, Louisiana. Plaintiff first Guarantee Association LLC owned the property at the time insurance was purchased, and transferred title to Mr. Seruntine sometime thereafter. According to the petition, Mr. and Mrs. Seruntine owned the property at the time of the loss. The petition alleges that State Farm had in force a business policy providing for dwelling and business interruption limits of $85,000 for damage to the dwelling and $22,600 for personal property contents, and flood coverage in the amount of $67,000 for property damage and $20,000 for contents. Mrs. Seruntine testified that she had both homeowners’ and flood insurance on this property prior to her marriage to Mr. Seruntine, but did not recall the coverage limits. Mr. Felix was the insurance agent prior to her marriage. She testified that following her conversations with the defendant agents and their employee, she believed that after the flood limits were paid on their policies, the homeowners’ policies would pay any unpaid damages. Mrs. Ser-untine denied having read either the flood or business policy on this property.
 

 While the insurance policies on this property were purchased in 2002, beyond the three-year peremptive period, Mr. Ser-untine testified on deposition that he contacted Mr. Felix’s office and advised the agent that he needed additional 17coverage to include the increase in the property’s value occasioned by extensive renovations
 
 *443
 
 that had been completed in late 2003. Thus, if the trier of fact were to believe from Mr. Seruntine’s testimony that he contacted the agency after February 22, 2003 to upgrade his policies, the plaintiffs’ claim against the agents with respect to this property is not perempted. This genuine issue of material fact precludes summary judgment as to the Center Street property.
 

 NANCY DRIVE Mr. Seruntine owns a rental house located at 3208 Nancy Drive in Meraux, Louisiana. According to the petition, State Farm had in force a homeowners’ policy providing limits of $81,931 for property damage and $4,000 for contents and loss of rent, and flood coverage in the amount of $77,000 for property damage and $20,000 for contents. The agent on these policies was Mr. Leblanc. Mr. Seruntine testified that he understood from his conversations with Mr. LeBlanc’s employee that Nancy Drive would be covered, and that whatever happened, if either the windstorm policy or the flood policy did not fully pay for his damages, the other policy would. He also understood that he needed more homeowner’s insurance than flood insurance because the property was in a “no flood zone”. Mrs. Seruntine confirmed this testimony. According to Mr. Seruntine’s deposition testimony, he had flood coverage of $83,200, reduced from $86,800 for the building and $20,700 for its contents, and rental dwelling coverage of $77,000
 
 [2]
 
 . The ■flood insurance policy was purchased on June 29, 2004, and the rental dwelling policy was purchased five months later, on June 29, 2004. Mr. Seruntine testified that after his initial conversation on February 23, 2004, he had no further discussions with Mr. Le Blanc or his employees. Mrs. Seruntine denied |8having read any policy covering this property. Since the policy was purchased within three years of the date suit was filed, the plaintiffs’ claims for damage to the Nancy Drive property are not perempted.
 

 It is clear from Mr. and Mrs. Serun-tines’ deposition testimony that they went to the defendant agents to secure full flood, business, and homeowners insurance coverage for their properties, and that agent defendants led them to believe that whatever the flood policies would not cover would be covered by the non-flood policies. It is also clear that there is evidence through the Seruntines’ deposition testimony that they relied on these assurances and did not verify those assurances by examining the policies when delivered or renewed.
 

 According to the defendants’ answer to Interrogatory # 4 submitted by the plaintiffs, State Farm issued checks to the plaintiffs as follows:
 

 [[Image here]]
 

 
 *444
 
 [[Image here]]
 

 From the foregoing response to the plaintiffs’ interrogatories, it appears that the plaintiffs received final payments under the policies as follows:
 

 98-RS6074-4 Flood Policy: November 30, 2005
 

 98-RR9696-2 Flood Policy: December 15, 2005
 

 98-RN5558-8 Flood Policy: November 28, 2005
 

 98-EL2732-5 Rental Dwelling Policy: January 2, 2006
 

 98-CW4271-3 Business Interruption Policy: December 27, 2005 18-CR7672-3 Homeowners Policy: January 18, 2006
 

 It is clear that, under the
 
 Middletork-Cook
 
 standard, at least until having received the final payments, if not later, plaintiffs had no actual or constructive notice that their claims would not be paid in full according to their expectations resulting from their earlier conversations with the defendant agents. Since the plaintiffs filed suit within one year of the dates on which they received final payments, we are compelled to conclude that, under the
 
 Mid-dletorir-Cook
 
 rationale, the suit is not prescribed or perempted pursuant to La. R.S. 9:5606 A and D unless it can be shown that they were filed more than three years from the date of the latest alleged act, omission, or neglect.
 

 | inWhile we are not in a position on the present record to draw any conclusions of the likelihood of any party, whether plaintiff or defendant, to prevail on the merits, it is clear that there are genuine issues of material fact concerning the detrimental reliance claim brought by the plaintiffs against the defendant agents with reference to the Center Street and Nancy Drive properties. In light of these genuine issues of fact, we are compelled to conclude that the summary judgment, as it relates to the Center Street and Nancy Drive properties, and as that concept is understood in this State, cannot be supported on the record before the Court.
 

 For the foregoing reasons, we grant the writ application, reverse the summary judgment rendered below in favor of the agent defendants with respect to the Center Street and Nancy Drive properties, affirm the summary judgment as to the Royal Street properties, and remand the case to the district court for further proceedings consistent with this opinion.
 

 WRIT GRANTED; SUMMARY JUDGMENT REVERSED IN PART AND AFFIRMED IN PART; CASE REMANDED.
 

 [1]
 

 . The insurer’s liability is not at issue in the instant writ application.
 

 [2]
 

 . Mr. Seruntine testified on deposition that State Farm paid him the full amount of his flood insurance coverage, $458.34 for rental coverage, and $4,229.40 for roof damage, on the Nancy Drive property.