GROSS, J.
The borrowers in a commercial real estate transaction appeal an order of' the trial court granting final judgment of foreclosure in favor of First-Citizens Bank & Trust Co. We affirm, holding that (1) the trial court did not abuse its discretion in granting summary judgment while discovery was outstanding and (2) the borrowers have shown no material issues of fact that would preclude summary judgment.
In 2006, the borrowers executed a promissory note for the sum of $825,000 in favor of Sun American Bank. To secure payment of the note, the borrowers executed and *605 delivered a mortgage and security agreement to Sun. Thereafter, the borrowers executed a renewal promissory note, which increased the principal balance of the debt to $925,000.
In 2010, Sun failed and was put into receivership, with the Federal Deposit Insurance Corporation appointed as the receiver. Thereafter, the FDIC assigned the promissory note and mortgage to First-Citizens, which, on April 5, 2010, provided the borrowers with written notice that they were in default of their February 2010 payment and that First-Citizens intended to accelerate the mortgage.
On September 1, 2010, First-Citizens filed a four count complaint to obtain (1) judgment on the notes, (2) foreclosure of the mortgage, (3) action on the security agreement, and (4) action on the guarantees. The borrowers[1] filed an answer and four affirmative defenses:[2] (1) failure of contractual condition precedent, (2) unclean hands, (3) failure to comply with certain unspecified conditions, and (4) failure to produce the original note and mortgage.[3]
As to the first affirmative defense — failure of contractual condition precedent— the borrowers alleged that First-Citizens failed to provide adequate notice of default and intent to accelerate, thereby “den[ying the borrowers] a good faith effort, pursuant to the Mortgage and the servicing obligations of [First-Citizens,] to avoid acceleration and ... foreclosure.” Furthermore, the borrowers alleged that First-Citizens “fail[ed] to engage in any foreclosure loss mitigation, as required,” or to “pursue effective foreclosure prevention strategies,” such as “evaluating] the particular circumstances surrounding their claimed default.” The borrowers did not, however, cite any portion of the loan documents or case law that would impose such fiduciary obligations on the lender in a commercial loan transaction.
For their second affirmative defense— unclean hands — the borrowers generally alleged that First-Citizens “intentionally fail[ed] to comply with the material terms of the mortgage and note in terms of notice of default and intent to accelerate,” such that foreclosure of the mortgage and “acceleration of the note would be inequitable, unjust, and ... unconscionable.” Once again, the borrowers failed to provide any specific allegations of impropriety-
On February 14, 2011, First-Citizens moved for summary judgment, alleging that there were no genuine issues of fact remaining. As to the defense of “failure of condition precedent,” First-Citizens argued that paragraph 9.2 of the renewal note “provide[d] that upon default, [First-Citizens,] at its option, had the right to accelerate the entire unpaid principal balance thereof “without notice or demand.’ ” Alternatively, if the loan documents required notice, First-Citizens had “provide[d the borrowers with] notice of default and acceleration.”
As to the borrowers’ unclean hands defense, First-Citizens argued that the defense was “unsupported by any factual allegation whatsoever ..., [wa]s made in bad faith, and [wa]s insufficient to over *606 come the evidence established by the Bank in support of its Motion for Summary Judgment.”
On March 10, 2011, the borrowers filed a request for the production of 146 documents and propounded 22 interrogatories. First-Citizens moved for a protective order. On April 12, 2011, Judge John J. Hoy denied First-Citizens’ motion without prejudice, with instructions to specially set a hearing on the protective order at a later date. In addition, Judge Hoy cancelled the upcoming summary judgment hearing and ordered that it be re-set for a date on or after May 27, 2011.
Thereafter, the ease was re-assigned to Judge Glenn Kelley. On August 11, 2011, upon First-Citizens’ request, Judge Kelley set a hearing on its summary judgment motion for October 18, 2011. At that point, First-Citizens had not complied with the discovery requests.
On October 4, 2011, just two weeks before the scheduled summary judgment hearing, the borrowers moved to compel discovery and for sanctions. Additionally, on October 11, 2011, the borrowers filed a response to First-Citizens’ motion for summary judgment, alleging for the first time an affirmative defense of “fraud.”[4] Along with their response, the borrowers relied upon an affidavit submitted by one of them, which stated that a representative of Sun “promised that the principal plus interest payments would be readjusted back to interest only payments.” According to the affidavit, “[djespite Sun[’s] numerous representations that the loan would be readjusted back to interest only payments, the adjustment was never made.”
On October 17, 2011, the day before the summary judgment hearing, the parties submitted an agreed order, whereby First-Citizens was required to respond to three interrogatories and outstanding document production requests. The next day, however, notwithstanding the discovery order, the trial court conducted the hearing on First-Citizens’ motion for summary judgment, the contents of which are not included in the record. On October 20, 2011, the trial court entered a final judgment of foreclosure in favor of First-Citizens.

Standard of Review

A circuit court’s order granting summary judgment is reviewed de novo. Sunshine State Ins. Co. v. Jones, 77 So.3d 254, 257 (Fla. 4th DCA 2012). “ ‘Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law.’ ” Id. (quoting Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000)). The plaintiff “must either factually refute the alleged affirmative defenses or establish that they are legally insufficient to defeat summary judgment.” Knight Energy Servs., Inc. v. Amoco Oil Co., 660 So.2d 786, 788 (Fla. 4th DCA 1995) (citations omitted). If the moving party sustains its initial burden of proof by tendering competent evidence in support of the motion, then the non-moving party has the “burden of coming forward with evidence establishing genuine *607 ... issues [of material fact].” Latour Auto Sales, Inc. v. Stromberg-Carlson Leasing Corp., 335 So.2d 600, 601 (Fla. 3d DCA 1976).

Analysis

On appeal, the borrowers argue that the trial court erred by prematurely granting summary judgment in favor of First-Citizens while discovery was pending. They contend that the requested discovery would have presented genuine issues of fact regarding the affirmative defenses of “standing, fraud, and unclean hands.” They also argue that the defenses of fraud and unclean hands “were inappropriate for summary judgment due to genuine disputed issues of material fact.”

The Borrowers’ Failure to Properly Plead Lack of Standing and Fraud as Affirmative Defenses Constituted Waiver

As a preliminary matter, the borrowers failed to properly plead the affirmative defenses of lack of standing and fraud, so they were not properly before the circuit court at the time it granted the motion for summary judgment.
Florida Rule of Civil Procedure 1.110(d) provides that “a party shall set forth affirmatively ... any ... matter constituting an avoidance or affirmative defense.” Application of this rule means “that affirmative defenses must be pleaded or they are considered waived.” Kersey v. City of Riviera Beach, 337 So.2d 995, 997 (Fla. 4th DCA 1976) (citations omitted); see also Fla. R. Civ. P. 1.140(b) (“Every defense in law or fact to a claim for relief in a pleading shall be asserted in the responsive pleading[.]”). In this regard, lack of standing and fraud are affirmative defenses that must be pled to avoid waiver. See Schuster v. Blue Cross & Blue Shield of Fla., Inc., 843 So.2d 909, 912 (Fla. 4th DCA 2003) (“There is no question that lack of standing is an affirmative defense that must be raised by the defendant and that the failure to raise it generally results in waiver.”); Cocoves v. Campbell, 819 So.2d 910, 913 (Fla. 4th DCA 2002) (“An affirmative defense of fraud that is not pleaded with particularity is deemed waived.”).
In the trial court, the borrowers failed to plead, or even argue, lack of standing as an affirmative defense. Furthermore, although the borrowers suggested fraud as a defense in their response to First-Citizens’ motion for summary judgment, such a filing did not discharge their duty to amend their pleadings in compliance with the rules of civil procedure. See Accurate Metal Finishing Corp. v. Carmel, 254 So.2d 556, 557 (Fla. 3d DCA 1971) (“Affirmative defenses must be pleaded and it is not sufficient to sustain a defense to a summary judgment motion to allege such in affidavits.” (citations omitted)); cf. B.B.S. v. R.C.B., 252 So.2d 837, 839 (Fla. 2d DCA 1971) (“An affirmative defense must be pleaded and not raised by a motion for summary judgment supported by an affidavit.” (citations omitted)). If the borrowers sought to raise these two defenses, they were required to obtain leave of court or the written consent of First-Citizens. See Fla. R. Civ. P. 1.190(a); Gray v. Purchase Corp., 573 So.2d 205, 206 (Fla. 1st DCA 1991).
By failing to properly plead lack standing and “fraud,” the borrowers waived their right to assert these affirmative defenses in response to First-Citizens’ summary judgment motion. Any requested discovery intended to prove either defense is therefore superfluous and cannot create a genuine issue of fact warranting reversal. In addition, the outstanding discovery requests would not have led to evidence that would have created an issue of material fact as to the defense of unclean hands since the requested discovery *608 related only to the defenses of standing and, tangentially, to “fraud,” both of which were waived.[5] In such a situation, “if the incomplete discovery will not raise future disputed issues of material fact, summary judgment may be properly granted.” Osorto v. Deutsche Bank Nat’l Trust Co., 88 So.3d 261, 268 (Fla. 4th DCA 2012) (citing Estate of Herrera v. Berlo Indus., Inc., 840 So.2d 272, 272 (Fla. 3d DCA 2003)).

The Trial Court Did Not Err in Granting Summary Judgment Pending Discovery Because the Borrowers Failed to Act Diligently

Another reason why the trial court did not abuse its discretion in granting First-Citizens’ motion for summary judgment is that the borrowers failed to act diligently in seeking the discovery. A trial court does not abuse its discretion in granting a motion for summary judgment, despite the pendency of discovery, where the non-moving party has failed to act diligently in taking advantage of discovery opportunities. See, e.g., Leviton v. Philly Steak-Out, Inc., 533 So.2d 905, 906 (Fla. 3d DCA 1988) (affirming a trial court’s order granting summary judgment despite the pendency of discovery where the defendants conducted very little discovery over a seven-month period and did not request a continuance of the summary judgment hearing to complete discovery).
For example, in Southern California Funding, Inc. v. Hutto, 438 So.2d 426, 431 (Fla. 1st DCA 1983), about six months after the commencement of the lawsuit, the defendant propounded discovery through requests for interrogatories and the production of documents. In response, the plaintiff timely objected to some of the demands for production. Id. Over two months later, the plaintiff served notice of a summary judgment hearing to be held on April 5. Id. The defendant took no action until two weeks before the hearing, at which point the defendant “served notice that their motion for continuance and to compel discovery would be called on for hearing on April 5,” the same day as the summary judgment hearing. Id. Under these circumstances, the first district held that the trial court did not abuse its discretion in entering summary judgment, despite the pendency of discovery, because the defendant “had not been diligent in seeking discovery.” Id. at 431-32.
The facts in this case more closely resemble those in Allen v. Shows, 532 So.2d 1304 (Fla. 2d DCA 1988). Allen held that the trial court did not abuse its discretion in granting summary judgment, despite the pendency of discovery, where it had given the non-moving party sufficient time to pursue discovery, but the party failed to do so. Id. at 1305. There, the second district affirmed an order granting summary judgment where the plaintiff failed to depose a witness where the trial judge had “deferred ruling on the summary judgment for nearly two months to permit” the plaintiff the opportunity to do so. Id.
*609 In the ease at hand, the borrowers initially sought discovery on March 10, 2011, six months after commencement of the suit, and were met by First-Citizens’ motion for a protective order. The trial court denied First-Citizens’ motion for a protective order without prejudice and deferred the summary judgment hearing, giving the borrowers time to resolve the discovery dispute. However, by failing to act for another six months, and waiting until two weeks before the later-set summary judgment hearing to file a motion to compel, the borrowers failed to act diligently in seeking discovery. By that time, the trial court was entitled to believe that the real purpose of discovery was delay, rather than the discovery of relevant information.

The Borrowers’ Claim of Unclean Hands, as Pled, Was Insufficient to Withstand First-Citizens’ Motion for Summary Judgment

The final basis raised for reversal is the borrowers’ perfunctory argument that First-Citizens did not eliminate the unclean hands defense. Unclean hands is an equitable defense that is akin to fraud; its “purpose is to discourage unlawful activity.” Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd., 970 F.2d 273, 281 (7th Cir.1992). “It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief[.]” Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). This court has equated
“sneaky and deceitful” with “unclean hands”.... “Equity will stay its hand where a party is guilty of conduct condemned by honest and reasonable men. Unscrupulous practices, overreaching, concealment, trickery or other uncon-scientous conduct are sufficient to bar relief.” 22 Fla.Jur.2d, Equity, § 50.
Hensel v. Aurilio, 417 So.2d 1035, 1038 (Fla. 4th DCA 1982); see also Precision Instrument, 324 U.S. at 819, 65 S.Ct. 993 (indicating that the unclean hands doctrine justifies dismissal of a plaintiffs claim where “inequitable conduct impregnate^ the] entire cause of action”).[6]
Like fraud, unclean hands “is not so subtle a concept that it cannot be described with precision.” Flemenbaum v. Flemenbaum, 636 So.2d 579, 580 (Fla. 4th DCA 1994). “ ‘One who has defrauded his adversary to his injury in the subject matter of the action will not be heard to assert a right in equity.’ ” Original Great Am., 970 F.2d at 281 (quoting Fruhling v. Champaign County, 95 Ill.App.3d 409, 51 Ill.Dec. 508, 420 N.E.2d 1066, 1071 (1981) (discussing the equitable defense of un *610 clean hands)). However, the party seeking to raise the defense should be well aware of those egregious facts that justify its application.
Here, the only facts asserted to support the defense of unclean hands were that First-Citizens “intentionally] fail[ed] to comply with material terms of the mortgage and note in terms of notice of default and intent to accelerate.” A failure to comply with the material terms of a loan document may be a breach of contract, and it may not be nice, but it does not amount to unclean hands.
A common problem we encounter in mortgage foreclosure appeals is that the appellant slings legal terminology in a brief — fraud, unclean hands, estoppel, TILA violation — without tying the legal concept to any set of real-world facts established in the trial court. As the Florida Supreme Court has aptly observed, “when a decree of the trial court is brought ... on appeal the duty rests upon the appealing party to make error clearly appear.” Lynn v. City of Fort Lauderdale, 81 So.2d 511, 513 (Fla.1955) (citing FEC News Co. v. Pearce, 58 So.2d 843 (Fla.1952)). To this end,
[a]n appellant does not discharge this duty by merely posing a question with an accompanying assertion that it was improperly answered in the court below and then dumping the matter into the lap of the appellate court for decision. Under such circumstances it must be held ... that [the appellate court is] under no duty to answer the question.

Id.

Following this principle, without further support, the borrowers’ cursory argument that the defense of unclean hands blocked summary judgment, because the lender failed to comply with “material terms of the mortgage,” is insufficient to warrant reversal. The borrowers failed to bring out those egregious facts that would have transformed such a “failure to comply” into an unclean hands defense sufficient to bar relief in equity.
In the summary judgment context, once the moving party has submitted evidence entitling it to relief, “[i]t is not enough for the opposing party merely to assert that an issue [of fact] does exist.” Landers v. Milton, 370 So.2d 368, 370 (Fla.1979) (citing Harvey Bldg., Inc. v. Haley, 175 So.2d 780 (Fla.1965); Farrey v. Bettendorf, 96 So.2d 889 (Fla.1957)). “Rather, it is ‘incumbent upon [the opposing party] to come forward with competent evidence revealing a genuine issue of fact[.]’ ” The Florida Bar v. Mogil, 763 So.2d 303, 307 (Fla.2000) (quoting Landers, 370 So.2d at 370).

Affirmed.

MAY, C.J., and GERBER, J., concur.

. The trial court entered a default judgment against one of the borrowers, Congress Park Owners Association, Inc.

. The borrowers raised two other affirmative defense related to the Florida Consumer Practices Act and the Florida Deceptive and Unfair Trade Practices Act, both of which were later withdrawn.

.This affirmative defense was effectively nullified when First-Citizens filed the original loan documents with the court on April 15, 2011.

. We use the term "fraud” only because that is the term used by the borrowers. We do not agree that the borrowers produced any set of facts that comprised the traditional elements of fraud: "(1) a false statement of material fact; (2) the maker of the false statement knew or should have known of the falsity of the statement; (3) the maker intended that the false statement induce another's reliance; and (4) the other party justifiably relied on the false statement to its detriment.” Prieto v. Smook, Inc., 97 So.3d 916, 917 (Fla. 4th DCA 2012) (quoting Shakespeare Found., Inc. v. Jackson, 61 So.3d 1194, 1199 n. 1 (Fla. 1st DCA 2011) (internal quotations omitted)).

. In fact, the borrowers' affidavit would have been insufficient to raise fraud even if it been properly pleaded. The affidavit alleged nothing more than a promise to modify a loan, stating “that the principal plus interest payment would be readjusted back to interest only payments.” The affidavit discloses no loss or change of position in reliance on this agreement. At best, the purported fraud was nothing more than a promise to modify the subject loan, an oral credit agreement as contemplated by Florida’s Banking Statute of Frauds, defined in section 687.0304, Florida Statutes (2010). See § 687.0304(l)(a), Fla. Stat. (2010) (defining a credit agreement as an “agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation").

. Discussing the limitations on the application of the equitable defense in the modem world, Judge Posner has written,
[t]oday, "unclean hands” really just means that in equity as in law the plaintiff’s fault, like the defendant's, may be relevant to the question of what if any remedy the plaintiff is entitled to. See Chafee, Coming Into Equity With Unclean Hands [II], 47 Mich. L.Rev. 1065, 1092 (1949). An obviously sensible application of this principle is to withhold an equitable remedy that would encourage, or reward (and thereby encourage), illegal activity, as where the injunction would aid in consummating a crime, the issue in Johnson v. Yellow Cab Transit Co., 321 U.S. 383, 64 S.Ct. 622, 88 L.Ed. 814 (1944). In what may have been the earliest application of the principle of unclean hands, a highwayman was refused an accounting against his partner in crime (and later hanged, to boot, along with the partner). See Everet v. Williams (Ex. 1725), belatedly reported in Note, The Highwayman’s Case, 35 L.Q. Rev. 197 (1893), and briefly discussed in Prosser and Keeton on the Law of Torts, § 50, at p. 336 n. 4 (5th ed.1984).
Shondel v. McDermott, 775 F.2d 859, 868 (7th Cir.1985).