GROSS, J.
This case presents the question of whether a married couple established tenancy by the entirety bank accounts under the guidelines set forth in Beal Bank, SSB v. Almand & Associates, 780 So.2d 45 (Fla.2001). We hold that the couple did not open such accounts and reverse the final order of the circuit court.
This appeal arose from litigation over the proceeds of two bank accounts previously held by the now deceased Donald Rich (“Rich”). In 2009, Rich’s daughter from a first marriage, Linda Wexler, filed a complaint against Rich’s second wife, Miriam Rich, claiming that she had conspired to appropriate Rich’s estate assets at the daughter’s expense. In pertinent part, the daughter contended that Miriam improperly caused Rich to transfer assets from bank accounts where Rich was the sole signatory, with the daughter as a beneficiary, into joint survivorship accounts with Miriam. Miriam’s answer denied the allegations and asserted that since Rich’s death, the subject accounts were unlawfully re-titled into Rich’s revocable trust without her consent. Miriam counterclaimed, seeking a declaration of her continued ownership in the accounts’ funds and the imposition of a constructive trust over those proceeds in her favor. The *1099 trial court entered an order in Miriam’s favor.
The testimony at trial told the following tale of the bank accounts. On November 8, 2007, Rich opened two single-party bank accounts in his own name with Bank United. On February 4, 2008, both accounts were converted into multi-party accounts with Miriam as a co-signer with a right of survivorship. Miriam and Rich told the Bank United employee who effected the account conversions that they wanted to open “joint accounts.” The employee inputted information into the bank’s computer and generated two new account forms. The bank’s forms contained a section entitled “Ownership of Account;” two of the options were “Multiple-Party Account” and “Multiple Party Account — Tenancy by the Entireties.” Another section of the forms, entitled “Beneficiary Designation,” contained various survivorship options. On each form, the bank employee checked the option designating the account as a “Multiple-Party” account, and not a “Multiple-Party Account — Tenancy by the En-tireties.” As to the beneficiary designation, the bank employee checked the box designating each account as a “Multiple-Party Account with Right of Survivorship.” The bank employee made these selections because Miriam and Rich had told her that they wanted to open “joint accounts” and because they did not expressly request that either account be held in the form of a tenancy by the entirety. Rich and Miriam had never discussed tenancies by the entirety and Miriam was not familiar with the concept. Moreover, because the employee was unfamiliar with the details of a tenancy by the entirety bank account, she did not discuss that form of ownership with the Riches.
Although there was a place on the account agreement forms for a customer to initial next to the type of account selected, neither Rich nor Miriam initialed that part of the form, nor were they asked to do so. After they reviewed the agreements with the employee for accuracy, Rich and Miriam signed each form at the bottom.
On May 5, 2009, Rich and Miriam went to Bank United and had the employee close both of the accounts opened on February 4, 2008. At the time they were closed, each account had a balance of $105,478.05. The employee cut two checks in that amount, each payable to Rich. Miriam did not object to the checks in Rich’s name alone because she believed that either of them was free to withdraw funds from the account with the consent of the other.
That same day, Rich and Miriam traveled to Floridian Community Bank where, with Miriam’s knowledge, Rich deposited the two' Bank United checks totaling $210,956.10 into a newly created account which was titled in Rich’s name alone, with Miriam and the daughter as equal “pay on death” beneficiaries. These funds were deposited along with funds from other accounts that are not at issue in this appeal. On May 7, 2009, Miriam drove Rich back to the Floridian Community Bank where, without her consent or knowledge, he signed papers transferring the ownership of the account from his individual name (with Miriam and the daughter as beneficiaries) to his revocable trust.
After Rich died three days later, the entire balance of $444,007.97 was withdrawn and made payable to his trust, rather than being split equally between Miriam and the daughter. Miriam first learned that Rich had changed the title to the account when she sought to transfer funds into a certificate of deposit a few days after his death. According to Miriam, she had never intended to waive her rights to the Bank United funds, but declined to object when they were transferred to the *1100 single-party account because she knew Rich was agitated and did not want to upset him, given his declining health.
Relying on Beal Bank, SSB v. Almand & Assocs., 780 So.2d 45 (Fla.2001), the circuit judge held that Miriam was entitled to recover $210,956.10, because the Bank United accounts were tenancies by the entirety, entitling Miriam to assert a claim over the funds in the possession of the revocable trust. The trial judge found that there was “no express disclaimer of the tenancy by the entirety designation” under Beal Bank, because “there was no discussion of options, no mention of the choices one would have when opening this account and no initials placed next to the form of ownership selected” by Miriam and Rich “to express what they knowingly intended.”
The designation of the accounts as tenancies by the entireties is crucial to Miriam’s claim, because one spouse may not transfer money from such an account without the consent of the other spouse, so that Miriam would be able to claim entire-ties funds in the possession of the trust. Id. at 53 n. 8. On the other hand, if the accounts were joint tenancies with a right of survivorship, the joint tenancy was terminated by Rich’s conveyance of funds to the Floridian Community Bank account; a “joint owner’s withdrawal of funds from a joint bank account terminates the ‘joint tenancy nature of the [funds] and severs the right of survivorship as to the funds withdrawn.’ ” Sitomer v. Orlan, 660 So.2d 1111, 1114 (Fla. 4th DCA 1995) (quoting Wiggins v. Parson, 446 So.2d 169, 172 (Fla. 5th DCA 1984)).
Beal Bank held that if a signature card made at the opening of a bank account did “not expressly disclaim the tenancy by the entireties form of ownership, a presumption arises that a bank account titled in the names of both spouses is held as a tenancy by the entireties as long as the account” is established consistent with the six characteristics of an entireties account. Beal Bank, 780 So.2d at 58; Sitomer, 660 So.2d at 1113. Beal Bank recognized that “an express designation on the signature card that the account is held as a tenancy by the entireties ends the inquiry as to the form of ownership,” so that there is no need to utilize a presumption to determine the nature of a bank account. 780 So.2d at 60. Also, Beal Bank indicated that a signature card’s “express disclaimer that a tenancy by the entireties was not intended” was effective to establish the absence of an entireties account, assuming no fraud. Id. at 60-61.
The Supreme Court identified two ways to expressly disclaim the entities account status; first, “an express statement signed by the depositor that a tenancy by the entireties was not intended, coupled with an express designation of another form of legal ownership” and second, “if the financial institution affirmatively provides the depositors with the option on the signature card to select a tenancy by the entireties among other options, and the depositors expressly select another form of ownership option of either a joint tenancy with right of survivorship or a tenancy in common.” Id. at 60.
This case demonstrates the second type of express disclaimer contemplated by Beal Bank. Bank United provided the Riches with account agreements containing the option of a tenancy by the entireties, but that option was not selected. Rather, the agreements established joint tenancies with right of survivorship. The Riches signed the agreements after having had a chance to review them. Freedom of contract “includes freedom to make a bad bargain.” Posner v. Posner, 257 So.2d 530, 535 (Fla.1972). Florida adheres to the principle that a “party has a duty to *1101 learn and know the contents of a proposed contract before he signs” it. Mfrs.’ Leasing, Ltd. v. Fla. Dev. & Attractions, Inc., 330 So.2d 171, 172 (Fla. 4th DCA 1976). Therefore, “[o]ne who signs a contract is presumed to know its contents.” Addison v. Carballosa, 48 So.3d 951, 954 (Fla. 3d DCA 2010). When the Riches signed the account agreements, they “expressly select[ed]” a form of account ownership other than a tenancy by the entireties, within the parameters set by the Supreme Court in Beal Bank.
The trial judge found no express disclaimer of tenancies by the entireties primarily because the bank employee did not discuss or explain the account ownership options with the Riches. As it applies to the mechanics of the bank-customer relationship in the opening of accounts, Beal Bank does not require a bank to explain the legal ramifications of the various account options. Only a handful of attorneys in Florida are able to describe the differences between a tenancy by the entireties bank account and a joint account with right of survivorship. The bank’s obligation is to clearly provide customers with the option of a tenancy by the entireties account, not to assist them in making a considered choice. To paraphrase the old proverb, a bank’s duty under Beal Bank is to lead the horse to water, not to make him drink it.
The parties have not argued the application of section 655.79(1), Florida Statutes (2009), apparently believing it is inapplicable because an amendment to it did not become effective until October 1, 2008.[1] This 2008 amendment provides that “[a]ny deposit or account made in the name of two persons who are husband and wife shall be considered a tenancy by the entirety unless otherwise specified in writing.” Ch. 2008-75, § 8, Laws of Fla. (2008). We note that if the statute were to apply here, the signed account agreements containing the option of a tenancy by the entireties and designating the accounts as “Multiple-Party Accounts] with Right of Survivorship” would satisfy the statutory requirement that an alternative form of account ownership be “specified in writing.”
For these reasons, we reverse the final order declaring the Bank United accounts to be tenancies by the entireties and remand to the circuit court for proceedings consistent with this opinion.
MAY, C.J., and STEVENSON, J., concur.

. Because it has not been briefed, we do not reach the issue of whether the 2008 amendment to section 655.79(1), Florida Statutes (2009), could be retroactively applied to this case. See In re Estate of Herring, 670 So.2d 145 (Fla. 1st DCA 1996).